IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUN LU,<br><br>*Plaintiff*,<br><br>v.<br><br>DEVICE X and DREAMALL,<br><br>*Defendants*. | Civil Action No. 1:23-cv-04282<br><br>Honorable John J. Tharp, Jr<br><br>JURY TRAIL DEMANDED |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER AND OTHER RELIEF**

Plaintiff Jun Lu ("Plaintiff") files this Memorandum in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order ("TRO"), including a temporary injunction, a temporary asset restraint, expedited discovery, and for alternative service ("*Ex Parte* Motion").

1

I.      **INTRODUCTION AND SUMMARY OF ARGUMENT**

Plaintiff is requesting temporary *ex parte* relief based on an action for design patent infringement against Defendants Device X and DreaMall (collectively, "Defendants"). As shown in Plaintiff's Complaint, Defendants are offering for sale and selling unlicensed products, namely electronic doorknobs ("Infringing Products"), that infringe Plaintiff's patented design through various fully interactive, commercial Amazon storefronts ("Defendant Amazon Stores").

Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Amazon Stores through which Illinois residents can purchase Infringing Products. The Defendant Amazon Stores share unique identifiers, such as design elements and similarities of the Infringing Products offered for sale, establishing a logical relationship between them. Further, Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their infringement operation. Plaintiff is forced to file this action to combat Defendants' infringement of its patented design, as well as to protect unknowing customers from purchasing Infringing Products over the Internet. Therefore, Defendants' ongoing unlawful activities should be restrained, and Plaintiff respectfully request that this Court issue an *ex parte* Temporary Restraining Order.

II.     **STATEMENT OF FACTS**

     A.    **Plaintiff's Products and Patented Design**

Plaintiff is the named applicant and inventor of United States Design Patent No. D981,205 ("Design Patent"). The Design Patent claims the ornamental design for an electronic doorknob. Plaintiff sells electronic doorknobs that embody the Design Patent under the brand name iulock Direct. Plaintiff sells iulock Direct branded electronic doorknobs in the United States via Amazon. Exhibit A, Declaration of Jun Lu ("Lu Decl.") at ¶ 4. The iulock Direct electronic doorknobs are

well established on Amazon and enjoy quality customer reviews and high ratings, earning 4.3 stars on nearly a thousand reviews. *Id.* at ¶ 5. Plaintiff has not licensed or authorized Defendants to practice the Design Patent, and none of the Defendants are authorized resellers of licensed products. *Id.* at ¶ 6.

### B. Defendants' Infringing Activities

Defendants are believed to be under the common control of one entity. They are an interrelated group of infringers working in active concert to make, use, offer for sale, sell, and/or import into the United States for subsequent sale or use products, namely electronic doorknobs, that directly infringe the Design Patent in the same transaction, occurrence, or series of transactions or occurrences. Plaintiff's well-pleaded allegations regarding registration patterns, similarities among the Defendant Amazon Stores and the Infringing Products for sale thereon, and common tactics employed to evade enforcement efforts establish a logical relationship among the Defendants suggesting that Defendants are interrelated and that the Infringing Products are commonly sourced.

### III. ARGUMENT

Defendants' infringing conduct is causing and will continue to cause irreparable harm to Plaintiff's intellectual property rights and associated reputation. Rule 65(b) provides that a court may issue an *ex parte* TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). Here, the entry of a TRO is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of the Design Patent and preserve the *status quo* until a hearing can be held.

In the absence of an *ex parte* TRO, the Defendants can and likely will register new online marketplace accounts under new aliases and move any assets to offshore bank accounts outside the jurisdiction of the Court. Numerous district courts have recognized that civil actions against infringers present special challenges that justify proceeding on an *ex parte* basis. S*ee Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infirming merchandise are often useless if notice is given to the infringers"). As such, Plaintiff respectfully request that this Court issue an *ex parte* TRO.

### A. Jurisdiction and Venue

As a preliminary matter, this Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Patent Act, 35 U.S.C. § 1, *et seq.*, and 28 U.S.C. §§ 1331 and 1338. Venue is proper pursuant to 28 U.S.C. § 1391.

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in the United States, including Illinois, through at least the fully interactive, commercial Defendant Amazon Stores. Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Amazon Stores through which Illinois residents can purchase products embodying the Design Patent. *See, e.g., Christian Dior Couture, S.A. v. Lei Liu et al.*, 2015 U.S. Dist. LEXIS 158225, at *6 (N.D. Ill. Nov. 17, 2015) (personal jurisdiction proper over defendant offering to sell alleged infringing product to United States residents, including Illinois; no actual sale required); *Ford Global Techs., LLC v. New World Int'l Inc.*, 2016 U.S. Dist. LEXIS 78384, at *9-13 (E.D. Mich. June 16, 2016) (finding personal jurisdiction over defendant who sold products infringing design patents on its website and on an eBay storefront). Each of the Defendants is

committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

**B.     Applicable Law**

Rule 65(b) provides that a "court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if . . . specifics facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b).

A Plaintiff seeking an *ex parte* restraining order must show: "(1) a likelihood that it will prevail on the merits of the lawsuit, (2) that it will suffer irreparable harm without injunctive relief, and (3) that there is no adequate remedy at law." *Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'n*, No. 13 C 2167, 2013 U.S. Dist. LEXIS 47248, at *4 (N.D. Ill. Mar. 27, 2013) (*citing Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005)). "If these requirements are met, the court must then balance the degree of irreparable harm to the plaintiff against the harm that the defendant will suffer if the injunction is granted." *Deckers*, 2013 U.S. Dist. LEXIS 47248 at *4 (*citing Incredible* Techs., 400 F.3d at 1011*));* see also *Boucher v. Sch. Bd. of the Sch. Dist. of Greenfield*, 134 F.3d 821, 824 (7th Cir. 1998). "The court must apply a sliding scale approach in determining whether to issue a temporary restraining order - the more likely the plaintiff will succeed on the merits, the less the balance of irreparable harms needs to be to favor the plaintiff's position." *Decker*, 2013 U.S. Dist. LEXIS 47248 at *4 (*citing TY, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001)). "Lastly, the court must consider the public interest (non-parties) in denying or granting the injunction." *Decker*, 2013 U.S. Dist. LEXIS 47248 at *4.

5

Finally, courts in this District have held that "proceedings against those who deliberately traffic in infringing merchandise are often rendered useless if notice is given to the infringers before temporary injunctive and impoundment relief can be granted." *Columbia Pictures Indus. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996).

### C. Plaintiff Will Likely Succeed on the Merits

The United States Patent Act provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). Plaintiff has shown a *prima facie* case of design patent infringement. Plaintiff is the named applicant and inventor of the Design Patent. As alleged in the Complaint, Defendants make, use, offer for sale, sell, and/or import into the United States for subsequent sale or use products that directly infringe the patented design.

As shown below, the Infringing Products sold on both of Defendants' Amazon Stores are substantially similar to the patented design such that an ordinary observer would be deceived into thinking that the Infringing Products are the same as the Design Patent. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 672 (Fed. Cir. 2008). Further, Defendants' products are not licensed or authorized in any way. Accordingly, Plaintiff is likely to establish a *prima facie* case of design infringement.



| Claimed Design | Exemplary Basis of Infringement |
|---|---|

### D. There Is No Adequate Remedy at Law, and Plaintiff Will Suffer Irreparable Harm in the Absence of Injunctive Relief

In the context of infringement of a design patent, irreparable harm occurs when the "remedies available at law, such as monetary damages, are inadequate to compensate for [that] injury." *Robert Bosch LLC v. Pylon Manufacturing Corp.,* 659 F.3d 1142, 1148 (Fed. Cir. 2011). A plaintiff need only show that an irreparable harm is likely in order for an injunction to issue. *See, e.g., Luminara Worldwide, LLC v. Liown Elecs. Co. Ltd.*, 814 F.3d 1343, 1352 (Fed. Cir. 2016); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In this case, in the absence of an injunction, Plaintiff will suffer irreparable harm due to loss of goodwill and reputation, and loss of control over intellectual property rights. Lu Decl. at ¶¶ 7-11. Such injury

7

is grounds for an injunction to issue. *See, e.g., Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013) ("Under [the Court of Appeals for the Federal Circuit's] precedent, price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm.") (internal quotes and cites omitted); s*ee also Otter Prods. v. Anke Group Indus. Ltd.*, 2:13-cv-00029, 2013 WL 5910882, at *2 (D. Nev. Jan. 8, 2013) (Holding TRO was necessary to prevent "irreparable injury…in the form of (a) loss of control over its intellectual property rights; (b) loss of consumer goodwill; and (c) interference with [plaintiff's] ability to exploit the OTTERBOX trademarks and design patents."); *see also Nike, Inc. v. Fujian Bestwinn Industry Co., Ltd.*, 166 F.Supp.3d 1177, 1178-79 (D. Nev. 2016) ("Absent an *ex parte* temporary restraining order and seizure order, Bestwinn's importation, sale, and/or offers to sell its Flyknit Design Infringements will result in immediate and irreparable injury to NIKE in the form of loss of control over its valuable intellectual property rights, loss of consumer goodwill, and interference with NIKE's ability to exploit the Flyknit Design Patents.").

In the absence of an injunction, Defendants' infringement of the Design Patent is likely to cause customer confusion with Plaintiff's products, resulting in harm to Plaintiff's reputation and loss of customers' goodwill. Lu Decl. at ¶¶ 7-11. As established by the Federal Circuit: "[h]arm to reputation resulting from confusion between an inferior accused product and a patentee's superior product is a type of harm that is often not fully compensable by money because the damages caused are speculative and difficult to measure." *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1558 (Fed. Cir. 1994); *see also Tuf-Tite, Inc. v. Fed. Package Networks, Inc.*, No. 14-cv-2060, 2014 WL 6613116, at *8 (N.D. Ill. Nov. 21, 2014) (quoting and relying on *Reebok* in finding irreparable harm).

A causal nexus exists between Defendants' infringement and each of the irreparable harms that Plaintiff is suffering. *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1364 (Fed. Cir. 2013). Here, Defendants' infringing use of the Design Patent in the Infringing Products is a substantial, if not the exclusive, reason for consumer demand of the Infringing Products. *See PCT Int'l Inc. v. Holland Elecs. LLC*, No. CV-12-01797-PHX-JAT, 2015 WL 5210628, at *23-24 (D. Ariz. Sept. 8, 2015), *aff'd*, No. 2016-1061, 2016 WL 4373941 (Fed. Cir. Aug. 16, 2016) ("The Federal Circuit has explained that when the products at issue are "relatively simple," in the sense that they have a small number of features, the causal nexus requirement is easier to satisfy because the infringing feature has a large impact on demand for the products").

Further, given that Defendants are individuals and business entities who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions with no U.S. presence, any monetary judgment is likely uncollectable. *See Robert Bosch, LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) (reversing denial of permanent injunction where the likely availability of monetary damages was in question, citing *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, No. 2:04-cv-0032, 2007 WL 869576, at *2 (E.D. Tex. Mar. 21, 2007) where "'all three defendants are foreign corporations and that there is little assurance that [plaintiff] could collect monetary damages'"). For the reasons stated above, Plaintiff will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Rule 65(b)(1).

### E. The Balancing of Harms Tips in Plaintiff's Favor, and the Public Interest Is Served by Entry of an Injunction

As willful infringers, Defendants are entitled to little equitable consideration as any harm to Defendants possibly resulting from a temporary restraint is self-inflicted. Defendants undertook a calculated risk when they engaged in design patent infringement. Under such circumstances,

9

courts refuse to assign any "harm" to the defendant because it assumed the risk. *See Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 992, 931 (Fed. Cir. 2012) ("the preliminary record suggests that LTC's losses were the result of its own calculated risk in selling a product with knowledge of Celsis' patent").

As Plaintiff has demonstrated, Defendants have been profiting from the sale of Infringing Products. Thus, the balance of equities tips decisively in Plaintiff's favor. The public is currently under the false impression that Plaintiff has granted a license to Defendants with respect to the Design Patent. In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

## IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

In relief, Plaintiff seeks a temporary restraining order against Defendants, enjoining them from making, using, selling, or offering for sale the infringing products and any other products which infringe upon Plaintiff's patented design. Furthermore, Plaintiff seeks a temporary asset freeze in order to ensure the availability of permanent relief given the likelihood that Defendants will simply transfer their assets in an attempt to evade any judgment against them entered by this Court. First, foreign infringers regularly transfer ill-gotten funds out of reach of U.S. courts and plaintiffs once notice of a lawsuit is received. Second, such relief has been found wholly appropriate in similar cases by Courts in this District. *See, e.g., Oakley, Inc. v. Does 1-100*, No. 12-cv-9864 (N.D. Ill. Dec. 14, 2012) (Dow, J.) (granting *ex parte* application for temporary restraining order including the transfer of domain names, freezing of Defendants' financial accounts, and service of process by electronic publication and electronic mail); *True Religion*

*Apparel, Inc. v. Does 1-100*, No. 12-cv-9894 (N.D. Ill. Dec. 20, 2012) (Coleman, J.) (same); *Tory Burch LLC v. Zhong Feng, et al.*, No. 12-cv-9066 (N.D. Ill. Nov. 15, 2012) (Bucklo, J.) (same); *Coach, Inc., et al v. Does 1-100*, No. 12-cv-8963 (N.D. Ill. Nov. 15, 2012) (Bucklo, J.) (same); *Tory Burch LLC v. Does 1-100*, No. 12-cv-07163 (N.D. Ill. Sep. 14, 2012) (Lee, J.) (same); *Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'n*, No. 13 C 2167, 2013 U.S. Dist. LEXIS 47248, at *25-26 (N.D. Ill. Mar. 27, 2013) (same).

The freezing of assets "is also appropriate in this case because Defendants may otherwise transfer their financial assets to overseas accounts, thereby depriving the Plaintiff of final relief." *See Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) ("[B]ecause the Lanham Act authorizes the district court to grant [plaintiff] an accounting of [defendant's] profits as a form of final equitable relief, the district court had the inherent power to freeze [the defendant's] assets in order to ensure the availability of that final relief."); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995) ("A request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief."); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 996 (7th Cir. 2002) ("[S]ince the assets in question ... were profits of the [defendants] made by unlawfully stealing [the plaintiffs'] services, the freeze is appropriate and may remain in place pending final disposition of this case."). Without an asset seizure in place, Defendants are highly likely to simply disappear into the night, leaving Plaintiff and this Court powerless to redress their unlawful acts, and in such cases, numerous courts in this circuit have held that an asset seizure is warranted.

### A. Preventing the Fraudulent Transfer of Assets Is Appropriate

Plaintiff requests an *ex parte* restraint of Defendants' assets so that Plaintiff's right to an equitable accounting of Defendant's profits from sales of Infringing Products is not impaired. Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, upon information and belief, the Defendants in this case hold most of their assets in China, making it easy to hide or dispose of assets, which will render an accounting by Plaintiff meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007). In addition, Plaintiff has shown a strong likelihood of succeeding on the merits of its design patent infringement claim, so according to 35 U.S.C. § 289, Plaintiff is entitled to recover "the extent of [Defendants'] total profit." Plaintiff's Complaint seeks, among other relief, that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts. Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve relief sought by Plaintiff.

The Northern District of Illinois in *Lorillard Tobacco Co. v. Montrose Wholesale Candies* entered an asset restraining order in a trademark infringement case brought by a tobacco company against owners of a store selling counterfeit cigarettes. *Lorillard Tobacco Co. v. Montrose Wholesale Candies*, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005). The Court recognized it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* (citing *Grupo Mexicano*, *de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308, 325 (1999)). Because

the tobacco company sought a disgorgement of the storeowner's profits, an equitable remedy, the Court found that it had the authority to freeze the storeowner's assets. *Id*.

Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, an asset restraint is proper.

      **B.**    **Plaintiff is Entitled to Expedited Discovery**

In addition, Plaintiff seeks expedited discovery to discover which financial systems and payment accounts Defendants use in their operations. The purpose is to identify any additional financial accounts used by Defendants in order to freeze any assets therein to halt Defendants' counterfeiting activities. "Federal Rule of Civil Procedure 26(d) explains that parties may generally serve discovery only after a Rule 26(f) conference, 'except ... when authorized by ... court order.' To determine whether to authorize expedited discovery in a particular case, courts generally apply a "good cause" standard." *Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'n*, No. 13 C 2167, 2013 U.S. Dist. LEXIS 47248, at *28 (N.D. Ill. Mar. 27, 2013), citing Fed. R. Civ. P. 26(b)(1) ("For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action."). In this case, much like as was the case in *Deckers*, "there is good cause to allow for expedited discovery." *Id.* at *28-29. "Because the Defendants in this case are located overseas and have gone to great lengths to conceal their identities and avoid detection, it is likely that this Court's restraining order would be of little value if the Plaintiff is unable to discover the Defendants' bank accounts and serve the financial institutions maintaining those accounts." *Id.* In light of this, Plaintiff respectfully requests this Court grant its Motion allowing Plaintiff to conduct expedited discovery related to the financial accounts and payment

13

systems used by Defendants in conjunction with the sale of the infringing products. This discovery is essential to preventing further harm to Plaintiff and is narrowly tailored to ensure such. Plaintiff's requested asset restraint would be entirely without purpose without the ability to discover those very same accounts. As such, Plaintiff respectfully request that it be allowed to conduct limited expedited discovery related to Defendants financial accounts, sales, and profits related to the infringing products.

### C. Service of Process by Email is Warranted

Pursuant to Federal Rule of Civil Procedure 4(f)(3), Plaintiff also requests that the Court enter an order permitting it to serve the summons, complaint, proposed temporary restraining order, and notice of any hearing the Court may schedule on Defendants by email.

First, service of process by email is warranted for Defendants since they are located in China and have no apparent presence in the United States. Nevertheless, United States District Courts, including in this District, have routinely permitted alternative service of process notwithstanding the applicability of the Hague Convention. *See e.g., In re Potash Antitrust Litig.,* 667 F. Supp. 2d 907, 930 (N.D. Ill. 2009) ("plaintiffs are not required to first attempt service through the Hague Convention."); *see also In re LDK Solar Securities Litigation*, No. C 07-05182 WHA, 2008 U.S. Dist. LEXIS 90702, at *4 (N.D. Cal. June 12, 2008) (authorizing alternative means of service on Chinese defendants without first attempting "potentially fruitless" service through the Hague Convention's Chinese Central Authority).

More importantly, the process of serving Defendants with the relevant documents by international mail (and through the Hague Convention) would likely take a minimum of several months. If the Court grants Plaintiffs' request for a temporary restraining order, the order would only remain in effect for a maximum of 14 days, and the hearing on the preliminary injunction

must occur "at the earliest possible time" prior to the expiration of the temporary restraining order. Fed. R. Civ. P. 65(b) ("The order expires at the time after entry–not to exceed 14 days–that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension.").

Secondly, service of process by email for Defendants is appropriate and necessary because Defendants, on information and belief: (1) rely primarily on electronic communications to communicate with its customers, demonstrating the readability of this method of communication and (2) Plaintiffs are unable to determine the exact physical whereabouts or identities of Defendants. *See, e.g., Deckers Outdoor Corp. v. P'ships & Unincorporated Ass'n, No*. 13 C 9807, 2013 U.S. Dist. LEXIS 47248, at *27 (N.D. Ill. Mar. 27, 2013) (finding service by email and electronic publication appropriate under similar circumstances). As such, Plaintiffs respectfully request this Court's permission to serve Defendants via email. Plaintiff expects to obtain the email addresses from Amazon.com with the discovery requested above.

## V.   A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a TRO or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum,* 889 F.2d 787, 789 (8th Cir. 1989). Because of the very limited number of defendants and the strong and unequivocal nature of Plaintiff's evidence of design patent infringement, Plaintiff respectfully requests that this Court require Plaintiff to post a bond of no more than one thousand U.S. dollars ($1,000.00). *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished) ($10,000 bond).

## VI. CONCLUSION

Defendants' operations are irreparably harming Plaintiff's business, its established brand, and consumers. Without entry of the requested relief, Defendants' infringement of the Design Patent in connection with the making, using, offering to sell, selling, or importing of the Infringing Products will continue to irreparably harm Plaintiff. Therefore, entry of an *ex parte* order is necessary. In view of the foregoing, Plaintiff respectfully requests that this Court enter a Temporary Restraining Order in the form submitted herewith.

DATED: July 7, 2023    Respectfully submitted,

By: */s/ Nicholas Najera*
David R. Bennett
**DIRECTION IP LAW**
P.O. Box 14184
Chicago, Illinois 60614
Tel: (312) 291-1667
dbennett@directionip.com

Of Counsel:
Timothy T. Wang
Texas Bar No. 24067927
twang@nilawfirm.com
Nicholas Najera
Texas Bar No. 24127049
nnajera@nilawfirm.com

**NI, WANG & MASSAND, PLLC**
8140 Walnut Hill Ln., Ste. 500
Dallas, TX 75231
Tel: (972) 331-4600
Fax: (972) 314-0900

*COUNSEL FOR PLAINTIFF*