IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JUN LU, *Plaintiff*, v. DEVICE X AND DREAMALL, *Defendants*. | Civil Action No. 1:23-cv-04282 Hon. John J. Tharp, Jr JURY TRIAL DEMANDED |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF LU'S MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff Jun Lu ("Plaintiff" or "Lu") submits this Memorandum of Law in support of its Motion for Preliminary Injunction ("PI Motion").

**I.    INTRODUCTION**

Lu respectfully moves for a Preliminary Injunction against Defendants Device X and DreaMall (collectively, "Defendants"), thereby enjoining Defendants from further infringing Plaintiff's patented design, U.S. Patent No. D981,205 ("D'205 Patent"). As alleged in Lu's Complaint, Defendants are offering for sale and selling unlicensed products, namely electronic doorknobs ("Infringing Products"), through various fully-interactive Amazon storefronts.

**II.    STATEMENT OF FACTS**

Lu is the named inventor and applicant of the D'205 Patent entitled "Electronic Doorknob." Declaration of Jun Lu ("Lu Decl.") at ¶ 3, attached hereto as Exhibit A. Lu sells electronic doorknobs on Amazon under the iulock Direct brand, which embody and practice the D'205 Patent. *Id.* at ¶ 4. Lu's iulock branded electronic doorknobs are well established on Amazon and enjoy quality customer reviews and high ratings, earning 4.3 stars on nearly a thousand reviews. *Id*. Lu's electronic doorknobs are distributed and sold only through the licensed Amazon

1

storefronts such as the iulock Direct store. *Id*. at ¶ 5. These products are known for their distinctive patented design and quality and are broadly recognized by consumers in this market. *Id*. Lu has not licensed the Defendants to use or practice the D'205 Patent, and none of the Defendants are authorized resellers of licensed products. *Id.* at ¶ 6.

### III. PROCEDURAL HISTORY

On July 10, 2023, the Court entered a Temporary Restraining Order ("TRO") against Defendants. *See* Dkt. No. 10. The TRO authorized Lu to provide notice of these proceedings to Defendants by sending an email to the email addresses provided for Defendants by third parties. Pursuant to the terms of the TRO, Lu served the TRO via email on Amazon on July 10, 2023, to restrain accounts and identify email addresses associated with Defendants Amazon storefronts. In due course, Lu then served the Summons, Complaint, and TRO on Defendants via email, pursuant with the terms of the TRO, on July 19, 2023. *See* Dkt. No. 12.

### IV. LEGAL STANDARD

"The several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 28. U.S.C. § 283.

A temporary restraining order or preliminary injunction may be issued upon a showing that: "(1) there is a reasonable likelihood that Plaintiff will succeed on the merits; (2) Plaintiff will suffer irreparable injury if the order is not granted because there is no adequate remedy at law; (3) the balance of hardships tips in Plaintiff's favor; and (4) the public interest will not be disserved by the injunction." *Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1076 (N.D. Ill. 1996)

V.  ARGUMENT

Lu now respectfully moves for a Preliminary Injunction against Defendants, thereby enjoining Defendants from making, using, offering for sale, selling, and/or importing the Infringing Products during the pendency of this litigation, along with a continued asset freeze.

    A.  **Extending the Relief Already Granted in the TRO to a Preliminary Injunction is Appropriate.**

First and foremost, the PI Motion should be granted due to at least the fact that this Court already granted a TRO (*see* Dkt. No. 10), and the standard for granting a TRO and the standard for granting a preliminary injunction are identical in this Circuit. Moreover, here, the requirements for a preliminary injunction extending the TRO have been satisfied. *See, e.g., Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, *1 (N.D. Ill. May 15, 2001) (citations omitted).

        *i.  Jurisdiction is proper in this Court.*

This Court has original subject matter jurisdiction over the claims in this action pursuant to the Patent Act, 35 U.S.C. § 1, *et seq.*, 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391.

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in the United States, including Illinois, through at least the fully interactive, commercial Defendant Amazon storefronts. Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendant Amazon storefronts through which Illinois residents can purchase Infringing Products. *See, e.g., Christian Dior Couture, S.A. v. Lei Liu et al.*, 2015 U.S. Dist. LEXIS 158225, at *6 (N.D. Ill. Nov. 17, 2015) (finding personal jurisdiction proper over defendant offering to sell alleged infringing product to United States residents, including Illinois; no actual sale required);

*Ford Global Techs., LLC v. New World Int'l Inc.*, 2016 U.S. Dist. LEXIS 78384, at *9-13 (E.D. Mich. June 16, 2016) (finding personal jurisdiction over defendant who sold products infringing design patents on its website and on an eBay storefront). Defendants are committing tortious acts in Illinois, engaging in interstate commerce, and wrongfully causing Lu substantial injury in the State of Illinois.

        *ii.*     *Lu has demonstrated a reasonable likelihood of success on the merits.*

A party seeking a preliminary injunction must demonstrate "that it has a better than negligible chance of success on the merits of at least one of its claims." *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.A.*, 549 F.3d 1079, 1096 (7th Cir. 2008). This is an "admittedly low requirement." *Id*.

Here, Lu more than meets this threshold inquiry by establishing a *prima facie* case of design patent infringement. First, Lu is the inventor and owner of the D'205 Patent and holds all rights therein. *See* Lu Decl. at ¶ 3. Second, as shown in the Complaint, Defendants make, use, offer for sale, sell, and/or import into the United States electronic doorknob products that directly infringe the patented design. *See* Dkt. No. 1-2. Third, under the ordinary observer test, the Infringing Products sold on Defendants' Amazon storefronts are substantially similar to the patented design such that an ordinary observer would be deceived into thinking that the Infringing Products are the same as the patented design. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 672 (Fed. Cir. 2008). For example, all major design elements of the D'205 Patent are present in the Infringing Products:

    (1)    both contain two identical cylindrically shaped doorknobs positioned along a central axis (*see* Exhibit B, Infringement Chart, at 1);

4

(2) both contain two identical escutcheons positioned at the door-ends of the cylindrical doorknobs and connected to the cylindrical doorknobs via a substantially similar smaller cylindrical connecting piece (*see id*. at 2);

(3) both contain substantially similar keypads positioned on the face of the outward facing doorknob (*see id*. at 3);

(4) both keypads contain eleven buttons (0-9 & check) arranged in the same circular pattern around an identical central keyhole (*see id*.);

(5) both contain an identical battery light indicator positioned below the central keyhole (*see id*.).

To counter this *prima facie* showing, Defendants will likely argue that the Infringing Products do not infringe the D'205 Patent because they embody and/or are licensed under U.S. Design Patent No. D971,002 ("D'002 Patent"), attached as Exhibit C. The (unfounded) logic is that a product that embodies one patent cannot infringe upon another patent. Of course, such an argument runs afoul of the basic and fundamental tenants of the United States patent system. *Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 879 n.4, 20 U.S.P.Q.2D (BNA) 1045, 1052 n.4 (Fed. Cir. 1991) ("The existence of one's own patent does not constitute a defense to infringement of someone else's patent. It is elementary that a patent grants only the right to exclude others and confers no right on its holder to make, use, or sell."). To these ends, the D'002 Patent as an infringement defense is a red herring and has no bearing on the likelihood of infringement of the D'205 Patent.[1]

---

[1] In fact, if anything, the D'205 Patent (filed Jan. 15, 2021) is invalidating prior art to the D'002 Patent (filed Jul. 19, 2022).

Further, Defendants are likely to point to minor differences in the D'205 Patent and the design of the Infringing Products. However, minor differences do not preclude infringement, as the standard is "substantially the same." *Egyptian Goddess*, 543 F.3d at 678 (*quoting Gorham Co. v. White*, 81 U.S. 511, 526-527 20 L. Ed. 731 (1871) (stating that the test of identify of design is "sameness of effect upon the eye" and "must be sameness of appearance, and mere difference of lines in the drawing or sketch… or slight variances in configuration… will not destroy the substantial identity."). Here, such slight variations include a difference in shape of the smaller cylindrical connecting piece and the presence of a recessed portion around the keyhole. However, even with such minor variations, the overall design and effect of the two designs, as outlined in Exhibit B, is unmistakably substantially similar to the eye of the ordinary observer.

Moreover, Defendants will likely point to differences between *unclaimed* portions of the D'205 Patent and the Infringing Products. It is important to note that in the D'205 Patent "broken lines… form no part of the claimed design." Dkt. No. 1-3 at Description. To these ends, any differences between the Infringing Products and the unclaimed broken lines (*i.e.*, the latch bolt, spindle, chassis) of the D'205 Patent are another red herring with no bearing on the likelihood of infringement. Accordingly, Lu has established a *prima facie* case of design patent infringement, and, thus, more than a reasonable likelihood of success on the merits of this claim.

> iii. Lu has demonstrated irreparable harm because there is no adequate remedy at law.

In the context of infringement of a design patent, irreparable harm occurs when the "remedies available at law, such as monetary damages, are inadequate to compensate for [that] injury." *Robert Bosch LLC v. Pylon Manufacturing Corp.,* 659 F.3d 1142, 1148 (Fed. Cir. 2011). A plaintiff need only show that irreparable harm is likely in order for an injunction to be issued.

6

*See, e.g., Luminara Worldwide, LLC v. Liown Elecs. Co. Ltd.*, 814 F.3d 1343, 1352 (Fed. Cir. 2016); *see also Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

In this case, in the absence of an injunction, Lu has and will suffer irreparable harm at least due to loss of goodwill, damage to business reputation, and loss of control over intellectual property rights, including licensing opportunities and the right to exclude. *See* Lu Decl. at ¶¶ 7-11 (detailing examples of irreparable harm suffered). Such injury is grounds for an injunction to issue. *See, e.g., Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1304 (Fed. Cir. 2013) ("Under [the Court of Appeals for the Federal Circuit's] precedent, price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm.") (internal quotes and cites omitted); s*ee also Otter Prods. v. Anke Group Indus. Ltd.*, 2:13-cv-00029, 2013 WL 5910882, at *2 (D. Nev. Jan. 8, 2013) (Holding TRO was necessary to prevent "irreparable injury…in the form of (a) loss of control over its intellectual property rights; (b) loss of consumer goodwill; and (c) interference with [plaintiff's] ability to exploit the OTTERBOX trademarks and design patents."); *see also Nike, Inc. v. Fujian Bestwinn Industry Co., Ltd.*, 166 F.Supp.3d 1177, 1178-79 (D. Nev. 2016) ("Absent an *ex parte* temporary restraining order and seizure order, Bestwinn's importation, sale, and/or offers to sell its Flyknit Design Infringements will result in immediate and irreparable injury to NIKE in the form of loss of control over its valuable intellectual property rights, loss of consumer goodwill, and interference with NIKE's ability to exploit the Flyknit Design Patents.").

In the absence of an injunction Defendants' infringement of the D'205 is likely to cause consumer confusion with Lu's products, resulting in harm to Lu's business reputation and loss of customers' goodwill, including drop of product ranking and forced price cuttings by Lu. *See* Lu Decl. at ¶¶ 7-11. As established by the Federal Circuit: "[h]arm to reputation resulting from

7

confusion between an inferior accused product and a patentee's superior product is a type of harm that is often not fully compensable by money because the damages caused are speculative and difficult to measure." *Reebok Int'l Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1558 (Fed. Cir. 1994); *see also Tuf-Tite, Inc. v. Fed. Package Networks, Inc.*, No. 14-cv-2060, 2014 WL 6613116, at *8 (N.D. Ill. Nov. 21, 2014) (quoting and relying on *Reebok* in finding irreparable harm).

To further highlight the inferior quality of the Infringing Products, Lu directs this Court to a YouTube video[2] posted by the "LockPickingLawyer" that reviewed the Infringing Products. This YouTube channel "aims to educate consumers about weaknesses and defects in security devices so they can make better security decisions."[3] Therein, the reviewer states the Infringing Product "also has a lock cylinder that was so unimpressive I decided not to do a full test of the electronics because unless it can make me waffles in the morning there is no feature that can make up for it." *Id*. at 36 – 50 second mark. The reviewer then proceeds to pick the lock of the Infringing Products twice in a matter of seconds and with minimal effort. *Id*. at 50 – 1:16 mark. The reviewer concludes by stating that "for literally pennies more, some minimal level of pick resistance could have been achieved just by adding security pins but apparently your security isn't worth it, at least to Zincker."[4] *Id*. at 1:20 – 131 mark. While the review is admittingly harsh, it only serves to underscore the inferiority of the Infringing Products which practice the ornamental design of the D'205 Patent, which in turn significantly harms Lu's business reputation and customer goodwill via consumer confusion.

Moreover, a causal nexus exists between Defendants' infringement and the irreparable harm that Lu is suffering. *Apple Inc. v. Samsung Elecs. Co.*, 735 F.3d 1352, 1364 (Fed. Cir. 2013).

---

[2] https://youtu.be/1zVFJbzCmZk
[3] https://www.youtube.com/@lockpickinglawyer/about
[4] Zincker is the brand name of the Infringing Products sold under the DreaMall storefront.

Here, Defendants' infringing use of the D'205 Patent in the Infringing Product is a substantial, if not the exclusive, reason for consumer demand of the Infringing Products. *See PCT Int'l Inc. v. Holland Elecs. LLC*, No. CV-12-01797-PHX-JAT, 2015 WL 5210628, at *23-24 (D. Ariz. Sept. 8, 2015), *aff'd*, No. 2016-1061, 2016 WL 4373941 (Fed. Cir. Aug. 16, 2016) ("The Federal Circuit has explained that when the products at issue are "relatively simple," in the sense that they have a small number of features, the causal nexus requirement is easier to satisfy because the infringing feature has a large impact on demand for the products"). For these reasons, Lu has and will continue to suffer immediate and irreparable injury, loss, or damage if a permanent injunction is not issued.

    iv.    *The balancing of harms tips in plaintiff's favor, and the public interest is served by entry of a permanent injunction.*

As willful infringers, Defendants are entitled to little equitable consideration, as any harm to Defendants that could possibly result from a permanent injunction is self-inflicted. Defendants took a calculated risk when they engaged in design patent infringement. Under such circumstances, courts refuse to assign any "harm" to the defendant because it assumed the risk. *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 992, 931 (Fed. Cir. 2012) ("the preliminary record suggests that LTC's losses were the result of its own calculated risk in selling a product with knowledge of Celsis' patent").

As Lu has demonstrated, Defendants have profited from the sale of Infringing Products. Thus, the balance of equities tips decisively in Lu's favor. The public is currently under the false impression that Lu has granted a license to Defendants with respect to the D'205 Patent. In this case, the injury to the public is significant, and the injunctive relief that Lu seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. Moreover, a Preliminary Injunction would serve to uphold patent rights generally. *See Apple*

*Computer, Inc. v. Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3rd Cir. 1983) "[I]t is virtually axiomatic that the public interest can only be served by upholding copyright protections and correspondingly, preventing the misappropriation of skills, creative energies, and resources which are invested in the protected work." As such, equity requires that Defendants be ordered to cease their infringing conduct.

### B. The Equitable Relief Sought Remains Appropriate.

In relief, Lu seeks a permanent injunction enjoining Defendants from making, using, selling, or offering for sale the Infringing Products. Furthermore, Lu seeks an asset freeze to ensure the availability of permanent monetary relief given the likelihood that Defendants will simply transfer their ill-gotten assets in an attempt to evade any judgment against them entered by this Court. Such relief is explicitly authorized under 28 U.S.C. § 283, and was previously granted in the TRO.

#### i. *The sale restraint is appropriate.*

To prevent the Defendants from further making, using, offering for sale, and selling the Infringing Products, Lu respectfully requests that the injunctive relief already awarded be extended through the pendency of this case. A preliminary injunction is necessary to enjoin Defendants from continuing to violate Lu's patent rights and causing irreparable harm during the pendency of this action.

#### ii. *The continued asset restraint is appropriate.*

Lu also requests a continued asset freeze so that Defendants' accounts in U.S.-based financial institutions remain frozen throughout the pendency of this litigation. In the absence of a preliminary injunction, Defendants are likely to move any assets to financial institutions in China or other foreign states, rendering any award against them uncollectable. Therefore, Defendants' assets should remain frozen for the remainder of the proceedings.

Given that Defendants are individuals and businesses who, upon information and belief, reside in the People's Republic of China or other foreign jurisdictions with no U.S. presence, any monetary judgment is likely uncollectable. *See Robert Bosch, LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011) (reversing denial of permanent injunction where the likely availability of monetary damages was in question, *citing O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, No. 2:04-cv-0032, 2007 WL 869576, at *2 (E.D. Tex. Mar. 21, 2007) where "'all three defendants are foreign corporations and that there is little assurance that [plaintiff] could collect monetary damages'"). In addition, and as established in Lu's TRO Memorandum, many federal courts, including the Northern District of Illinois, have granted orders preventing the fraudulent transfer of assets. *See Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992). As such, an order continuing to freeze Defendants' assets should be granted.

## VI. CONCLUSION

In view of the foregoing, Lu respectfully requests that this Court enter a Preliminary Injunction enjoining Defendants from further infringement and extending the asset restraint granted in the TRO.

DATED: July 20, 2023　　　　　　　　　　　　　Respectfully submitted,

By: */s/ Nicholas Najera*
David R. Bennett
**DIRECTION IP LAW**
P.O. Box 14184
Chicago, Illinois 60614
Tel: (312) 291-1667
dbennett@directionip.com

Of Counsel:
Timothy T. Wang
Texas Bar No. 24067927
twang@nilawfirm.com
Nicholas Najera
Texas Bar No. 24127049
nnajera@nilawfirm.com

**NI, WANG & MASSAND, PLLC**
8140 Walnut Hill Ln., Ste. 615
Dallas, TX 75231
Tel: (972) 331-4600
Fax: (972) 314-0900

*COUNSEL FOR PLAINTIFF*

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of July, 2023, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court for the Northern District of Illinois, Eastern Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

*/s/ Nicholas Najera*

Nicholas Najera