## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JUN LU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 23-cv-4282 |
| | ) | |
| DEVICE X and DREAMALL, | ) | Judge John J. Tharp, Jr. |
| | ) | |
| Defendants. | ) | |
| | ) | |

### PRELIMINARY INJUNCTION ORDER

For the reasons set forth in the Statement below, the plaintiff's motion for preliminary injunction [13] is granted.

### STATEMENT OF REASONS

Plaintiff Jun Lu is the named applicant and inventor of United States Design Patent No. D981,205 (hereafter, '205 Patent), which claims an ornamental design for an electronic doorknob. Compl. ¶ 20, ECF No. 1; '205 Patent, ECF No. 1-3. Lu has brought suit against the defendant Amazon storefronts doing business as Device X and DreaMall, alleging that they sell three electronic doorknob product lines on Amazon.com (the H1, H2, and K1 series products) that infringe on the claimed design of his '205 Patent. Based on Lu's allegations and *ex parte* motion, the Court entered a temporary restraining order that, *inter alia*, enjoined the defendants from offering these products for sale. ECF No. 10. The TRO has since expired.[1]

While the TRO was in effect, the defendants appeared through counsel, and Lu moved for a preliminary injunction that would include similar restrictions to those in the TRO. ECF Nos. 11, 13. The motion is now fully briefed, and the Court conducted a telephone hearing on the motion on August 9, 2013. The Court directed the parties to provide supplemental briefing on the propriety of consideration of embodiments of the claimed design and thereafter directed the defendants to

---

[1] The plaintiff asserts that this Court should grant the preliminary injunction motion because it "already granted a TRO … and the standard for granting a TRO and the standard for granting a preliminary injunction are identical in this Circuit." Mem. at 3, ECF No. 13-1. The TRO was issued, however, in an expedited, *ex parte* proceeding and does not, of course, preclude the Court from revisiting its initial impressions based on that incomplete record in a preliminary injunction proceeding as to which the defendant has received notice and an opportunity to respond to the plaintiff's arguments. By the plaintiff's logic, there would be no need for a preliminary injunction proceeding, a position that cannot be squared with the limited shelf life of a TRO and the notice and hearing requirements for issuance of a preliminary injunction motion. *See* Fed. R. Civ. P. 65.

provide the Court with the alleged infringing products for comparison to the claimed design.[2] Based on the foregoing record, the Court concludes that the plaintiff's motion for preliminary injunctive relief should be granted.

"The several courts having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 28. U.S.C. § 283. Ordering preliminary injunctive relief before the merits of a case have been decided "is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). As the party seeking the preliminary injunction, Lu bears the burden of showing that such relief is warranted. He must show that he has some likelihood of succeeding on the merits, is likely to suffer irreparable harm in the absence of preliminary relief, the balance of equities tips in his favor, and the requested relief is in the public interest. *Speech First, Inc. v. Killeen*, 968 F.3d 628, 638 (7th Cir. 2020), *as amended on denial of reh'g and reh'g en banc* (Sept. 4, 2020); *Mays v. Dart*, 974 F.3d 810, 818-22 (7th Cir. 2020).

In response to Lu's motion, the defendants focus almost exclusively on the likelihood of success element, contending that their products are not substantially similar to, and therefore do not infringe, Lu's patented design. To satisfy the likelihood of success element, Lu must make a "strong" showing of success—which "normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020).[3] A strong showing, however, means something less than proof by a preponderance, as that is the standard required to prevail on the merits. *Id.*; *Mays*, 974 F.3d at 822.

The test for assessing a claim of design patent infringement is whether, in comparing the patented and accused designs, "in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008) (en banc) (quoting *Gorham Mfg. Co. v. White*, 81 U.S. 511, 528 (1871)).[4]

---

[2] The Court agrees with the parties' response that consideration of an embodiment of the claimed design is generally not appropriate. *See Payless Shoesource, Inc. v. Reebok Intern. Ltd.*, 998 F.2d 985, 990 (Fed. Cir. 1993). Accordingly, the Court did not request or examine any of the plaintiff's products.

[3] The plaintiff erroneously cites, on at least two occasions, this Circuit's former, now-defunct, "better than negligible chance of success on the merits" standard. Memo. at 4 (citing *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S.A.*, 549 F.3d 1079, 1096 (7th Cir. 2008)); Reply at 5 (same). The Seventh Circuit has explained that the Supreme Court "retired" that standard in *Winter v. Natural Resources Defense Council*, 555 U.S. 7 (2008) and *Nken v. Holder*, 556 U.S. 418 (2009). *Illinois Republican Party*, 973 F.3d at 762-63. The correct standard is outlined in the accompanying text to this note above.

[4] The ordinary observer is deemed to be familiar with relevant prior art and to evaluate differences between the claimed design and the accused product(s) in the context of the prior art. *Egyptian Goddess*, 543 F.3d at 676-77. Comparison between the claimed design and prior art can

"[M]inor differences between a patented design and an accused article's design cannot, and shall not, prevent a finding of infringement." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010) (alteration in original) (quotation marks omitted) (quoting *Payless Shoesource, Inc. v. Reebok Int'l Ltd.*, 998 F.2d 985, 991 (Fed. Cir. 1993)). "Where, as here, the claimed design includes several elements, the fact finder must apply the ordinary observer test by comparing similarities in overall designs, not similarities of ornamental features in isolation." *Ethicon Endo-Surgery*, 796 F.3d at 1335. "[F]unctional aspects of the claimed designs are properly excluded from the infringement analysis." *Id.* at 1315

With the ordinary observer/substantial similarity test and its accompanying principles in mind, the Court turns to comparison of the '205 Patent design to the accused products. The Federal Circuit has repeatedly warned against over-reliance on verbal descriptions of design patent illustrations. *Crocs*, 598 F.3d at 1302-03. Accordingly, to avoid unnecessary verbal distortion of what is claimed through illustration, below is a selection of the drawing sheets for the '205 Patent, followed by images of the accused products:



---

help provide a frame of reference with which to assess the significance of the differences between the claimed and accused designs. *Id.* Reference to prior art, however, is not a requirement. *See id.* at 678 (acknowledging that in some cases, "it will be clear without more that the patentee has not met its burden of proving the two designs would appear 'substantially the same' to the ordinary observer"). Here, neither party has referred to prior art, so the Court does not consider it.





'205 Patent, Figs. 1-2, 6.[5]

---

[5] The Court notes that only solid lines are considered part of the design patent claim. Dotted or dashed lines are not. They provide context but do not limit the scope of the claimed design.

5

The next two photos below show the H1 series accused product:





The next two photos below show the H2 series accused product:





Below is the K1 series accused product:





Defs.' Resp. at 4-11, ECF No. 18.

A holistic comparison of the three accused products to the claimed design shows that they are all substantially similar to it. To start from the head-on view, they each convey similar overall impressions of concentricity, in similar proportions, starting with the round keyhole cylinder in

the middle, out to the ring of evenly spaced circular buttons, out to the circular face and tubular knob, and finally out to the circular rose/backplate that meets the door frame. To be sure, as the defendants point out, the H1 and H2 series products are not perfectly round knobs—they are shaped like some kind of three-dimensional squircle,[6] rounded rectangular cuboid, or the like—but given their roundness, they still contribute to the overall concentric impression, particularly in light of the fact that the shape of the *faces* of the knobs for all the accused products—including both the H1 and H2 models—are circles.

With acknowledgment of, but not undue attention to, certain individual elements, the '205 design and the accused products also all share the same feature of having battery indicators on the bottom part of the ring of buttons, and the buttons are symmetrically placed on the exterior knob handle face. This similarity has a minor but noteworthy contribution to the overall similarity since there are relatively few non-circular features to note otherwise. Then, from an angled view—without attention to the functional elements—the designs remain substantially similar, with the tubular handles abutting the similarly wider, flat, and circular roses/backplates in similar overall proportions. And then, the general contours of the backplate and handle are mirrored on the other side of the door.

The defendants attempt to identify minor differences among the '205 design and the accused products other than the H1 and H2's less-than-perfectly-round knobs. For one, they point to their products' lack of a "lollipop"-shaped indentation on the knob face between the keyhole and the ring of buttons. Next, they point out that the ordering of the buttons is different; whereas the '205 design is numbered clockwise from 0-9 then checkmark, the accused products are arranged from 1-9, 0, and then checkmark. The font for the numbers and checkmarks also differ. The defendants provided the below illustrated comparison:

---

[6] *See* Kurt Kohlstedt, *Circling the Square: Designing with "Squircles" Instead of Rounded Rectangles*, 99% Invisible (Feb. 12, 2018), https://99percentinvisible.org/article/circling-square-designing-squircles-instead-rounded-rectangles/.





Resp. at 7 (comparing H2 series vs. claimed design) (green and red annotations added by the defendants as a visual aid). Finally, the H2 product, as depicted from the angled overhead view, *supra*, has a round circular area on the top of the knob cylinder, which appears to be slightly indented, and which the defendants describe as "a round dark material for receiving fingerprints."

But these differences do not sufficiently diminish the overall similarity among the claimed design of the '205 Patent and the defendants' accused products, at least not at this stage, where the plaintiff needs only show that he is has some reasonable likelihood of succeeding. The differences on which the defendants rely are easy to miss and their contributions to the overall design of the accused products pale in significance to the prominent design elements that the accused products share with the claimed design. Pointing out that the knob cylinder on one of the three accused products is not perfectly cylindrical, for example, does not overcome the fundamental cylindricality that the accused products share with the claimed design. Less significant still are the minute and trivial differences between the exterior knob faces the defendants identify; that the accused products—like the claimed design—have knobs with flat, circular face plates and a keypad that displays a circular ordering of the same set of 10 digits and a checkmark contributes far more to the overall design of the accused products than does the order in which those digits appear or the barely discernible difference in the font of those numerals or the shape of the checkmark. To focus on these relatively inconsequential details, as do the defendants, is to miss the forest for the trees. *See Crocs, Inc. v. International Trade Com'n*, 598 F.3d 1294, 1303-04 (Fed. Cir. 2010) (reversing Commission's finding of no infringement where it had "used minor differences between the patented design and the accused products to prevent a finding of infringement," and finding that its "concentration on small differences in isolation distracted from the overall impression of the claimed ornamental features").

There is a reason the applicable standard is "substantial similarity," and not "perfect identity": As the plaintiff notes, the Supreme Court has stated, "One who seeks to pirate an invention, like one who seeks to pirate a copyrighted book or play, may be expected to introduce minor variations to conceal and shelter the piracy. Outright and forthright duplication is a dull and very rare type of infringement." *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 607 (1950). Moreover, the plaintiff also correctly reminds that "the 'ordinary observer' is . . . not a patent lawyer 'who inspects the designs critically to highlight each and every perceivable difference between them.'" Pl.'s Reply at 3 (quoting *Durdin v. Kuryakyn Holdings, Inc.*, 440 F. Supp. 2d 921, 933-34 (W.D. Wis. 2006)). Based on the foregoing, the Court finds that Lu has established a sufficient likelihood that he can prove that there is a substantial similarity among the claimed design and the accused products such that an ordinary observer would be deceived.

Moving on to the next disputed element of the preliminary injunction standard, the defendants dedicate a few short paragraphs to the element of irreparable harm. They—mostly conclusorily—argue that the Lu's claims are "too speculative in nature and any likely harm can be remedied by monetary damages." Resp. at 13-14. But they are faced with an uphill battle given that the Federal Circuit has held that "[a] strong showing of likelihood of success on the merits coupled with continuing infringement raises a presumption of irreparable harm to the patentee." *Reebok Intern. Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1556 (Fed. Cir. 1994). And they have done little to combat that presumption, particularly in light of Lu's affirmations concerning the reputational harms he has suffered and will likely continue to suffer absent relief. Lu has provided evidence that, since the introduction of infringing products on the market, his product has declined in popularity from top 50 in the electronic doorknobs category to top 200. *See* Ex. A to Memo., Decl. of Jun Lu at 7-8, ECF No. 13-2); *see also Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1368 (Fed. Cir. 2001) (likelihood of price erosion and loss of market position are evidence of irreparable harm). Moreover, the allegedly infringing products have been identified by industry commentators as being of relatively low quality, which can be reasonably

be assumed to damage Lu's product's reputation in a manner that cannot be readily measured in dollars. Memo. at 8. *See Reebok Intern. Ltd.*, 32 F.3d at 1558 ("Harm to reputation resulting from confusion between an inferior accused product and a patentee's superior product is a type of harm that is often not fully compensable by money because the damages caused are speculative and difficult to measure.").

The defendants do not address the two remaining factors, balance of the harms and public interest. They, relatively straightforwardly, militate in favor of granting a preliminary injunction and are buttressed by the Court's findings of Lu's likelihood of success and irreparable harm. In addition to the harms described above, for Lu to have to continue competing against his own design while his patent continues to lose value is a weighty hardship. The defendants have offered no hardships for the Court to consider beyond the obvious hardship of not being able to sell the allegedly infringing products. As for the public interest, the public—consumers and innovators alike—always has an interest in enforcement and protection of patent rights. *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 931 (Fed. Cir. 2012).

Accordingly, the Court concludes that Lu has satisfied the requirements for entry of a preliminary injunction, as set forth below.

## PRELIMINARY INJUNCTION

It is ORDERED:

1. Defendants, their officers, agents, servants, employees, attorneys and all persons acting for, with, by, through, under, or in active concert with them be preliminarily enjoined and restrained, during the pendency of this action, from:

   a. offering for sale, selling, and/or importing the Defendants' H1, H2, and K1 products and any other product that reproduces, copies, embodies, or colorably imitates the doorknob design claimed by the '205 Patent, unless authorized to do so by Plaintiff;

   b. aiding, abetting, contributing to, or otherwise assisting anyone in infringing upon the '205 Patent of the doorknob design; and

   c. effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in Subparagraphs (a) and (b).

2. Defendants shall not transfer or dispose of any money or other of Defendants' assets in any of Defendants' financial accounts that have received any funds derived from sales or importation of Defendant's H1, H2, and K1 products or any products that reproduce, copy, embody, or colorably imitate the doorknob design claimed by the '205 Patent.

3. Upon Jun Lu's request, those with notice of this Order, including any third-party providers including, without limitation, any online marketplace platforms such as eBay, Inc., AliExpress, Alibaba, Amazon.com, Inc., Wish.com, and Dhgate (collectively, the "Third Party Providers"), shall within seven (7) calendar days after

receipt of such notice, disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the doorknob design claimed by the '205 Patent.

4. Any Third Party Providers, including PayPal, Alipay, Alibaba, Ant Financial, Wish.com, and Amazon Pay, shall, within seven (7) calendar days of receipt of this Order:

   a. locate all accounts and funds connected to Defendants and any seller aliases, including, but not limited to, any financial accounts connected to, and any e-mail addresses provided for, Defendants by third parties; and

   b. restrain and enjoin any such accounts or funds from transferring or disposing of any money or other of Defendants' assets until further order by this Court.

The two-thousand dollar ($2,000.00) bond shall remain with the Court until a final disposition of this case or until this Preliminary Injunction is terminated.

SO ORDERED:

Dated: September 14, 2023

John J. Tharp, Jr.
United States District Judge